Kalpana Srinivasan (SBN 237460)
SUSMAN GODFREY L.L.P.
1901 Avenue of the Stars, Suite 950
Los Angeles, California 90067-6029
Telephone: (310) 789-3100
Facsimile: (310) 789-3150
ksrinivasan@susmangodfrey.com

Max L. Tribble, Jr. (*Pro Hac Vice Pending*)
State Bar No. 20213950
Matthew C. Behncke    (*Pro Hac Vice Pending*)
State Bar No. 24069355
SUSMAN GODFREY L.L.P
1000 Louisiana Street, Suite 5100
Houston, Texas 77002-5096
Telephone:  (713) 651-9366
Fax:  (713) 654-6666
mtribble@susmangodfrey.com

ATTORNEYS FOR PLAINTIFF
HOUSECANARY, INC.

# UNITED STATES DISTRICT COURT

## NORTHERN DIVISION OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| HOUSECANARY, INC.<br><br>                    Plaintiff,<br><br>        vs.<br><br>QUICKEN LOANS INC., ONE REVERSE MORTGAGE, LLC, and IN-HOUSE REALTY, LLC,<br><br>                    Defendant. | Case No.<br><br>**COMPLAINT**<br><br>**1.   Misappropriation of Trade Secrets;**<br>**2. Violation Of The Defend Trade Secrets Act**<br>**3.   Violation of Cal. Bus. & Prof. Code §§ 17200,** *et seq.*<br><br>**Jury Trial Demanded** |

        Plaintiff HouseCanary, Inc. ("HouseCanary"), by its undersigned counsel,

hereby complains against Defendants Quicken Loans Inc. ("Quicken Loans"), One

Reverse Mortgage, LLC ("One Reverse Mortgage"), and In-House Realty, LLC ("In-House Realty" and, collectively, "Defendants"), and alleges, as follows:

## INTRODUCTION

1.   Accurate home valuations are commercially invaluable and extremely difficult to create.  In the wake of the mortgage crisis, Quicken Loans, Inc. – the second largest mortgage lender and largest online mortgage lender in the United States – knew that in order to maintain its dominance in the real estate market it needed to tout having the most accurate home valuations.  Quicken closed loans of $96 billion in 2016 and understood that having loans held up or kicked back because of poor valuations is very costly for its business.

2.   Quicken Loans wanted access to the best and most accurate valuation models and technology to protect their loans. Rather than expend the time and resources to develop its own models, know-how and acquire the best training data internally, Quicken Loans and others in its Family of Companies (FOC) – Amrock Inc. (formerly known as Title Source, Inc. or TSI), One Reverse Mortgage, LLC, and In-House Realty, LLC – decided to take a short cut.

3.   They stole HouseCanary's cutting-edge and highly accurate technology and accompanying data to develop their own competing analytics and software.

4.   Amrock and HouseCanary signed a stringent Non-Disclosure Agreement ("NDA") in December 2013.  That NDA prohibited Amrock, Quicken Loans, or any other Amrock affiliate from reverse engineering HouseCanary's models or the output of those models, including automated valuation models ("AVMs"), or otherwise using HouseCanary's confidential information to develop their own products.  In particular, NDA section II(2)(A)(vi) required Amrock, Quicken Loans and other affiliates:

> ***not to disassemble or decompile software, or otherwise attempt to reverse engineer*** the design and function of any of the Confidential Information, nor … ***develop,*** manufacture, produce, and/or distribute ***any software product or business derived from or which otherwise uses any of the Confidential Information.***

5.      Over the next year, representatives from Amrock and Quicken Loans met with HouseCanary to explore HouseCanary's technology, including multiple meetings in HouseCanary's California offices during which Amrock employees discussed a relationship on behalf of Quicken Loans and One Reverse Mortgage.

6.      HouseCanary entered into a license agreement in January 2015 with Amrock that gave Amrock a 120-day evaluation period and then the rights to certain HouseCanary's appraisal software products for a fee.

7.      After working together for another 10 months and learning even more about HouseCanary's valuation technology, Amrock and Quicken Loans raised entering a more expansive deal with HouseCanary that would include access to HouseCanary's valuation models and other analytics to the FOCs.

8.      In September 2015, HouseCanary continued to discuss with Amrock and Quicken Loans a contract by which they both would get access to HouseCanary's technology.

9.      Ultimately, HouseCanary executed a much more limited agreement in November 2015 solely with Amrock.  Quicken Loans was a beneficiary to the agreement by getting access to HouseCanary's automated valuation models and property comparables for its bankers to access during initial discussions with customers.

**HC AVM value available to QL bankers getting valuation and example comps during initial discussion**

10.     That agreement specifically barred use by Amrock of any of HouseCanary's data to create any database or derivative products.  Amrock also was strictly forbidden from reverse engineering or otherwise utilizing any analytics it obtained from HouseCanary.

**Unless agreed to in writing, Licensee may not (a) use any Appraisal, analytics, metrics, reports or any Data for any purpose other than as expressly set forth herein, (b) deliver or display any Appraisal, analytics,**

**metrics, reports or any Data to the general public via the Internet or other electronic or print media, including email or direct mail, or otherwise use any Appraisal or other analytics, metrics, reports or Data for advertising or promotional campaigns, (c) or resell, relicense, or redistribute any analytics, metrics, reports or Data in whole or in part or use any analytics, metrics, reports or Data, or any portion thereof, to create any database or derivative products. Licensee may not decompile, disassemble, scrape, decode, reverse translate, or reverse engineer any analytics, metrics or reports or any component or portion thereof.**

11.     Notably, during negotiations counsel for Amrock and Quicken attempted to remove the provision in the contract stating Amrock could not "resell, relicense, or redistribute any analytics, metrics, reports or Data in whole or in part or use any analytics, metrics, reports or Data, or any portion thereof, to create any database or derivative products [*or*] decompile, disassemble, scrape, decode, reverse translate, or reverse engineer any analytics, metrics or reports or any component or portion thereof."  HouseCanary insisted on that provision remaining if the agreement was to be signed and the provision remained in the signed Agreement.

12.     With the contract signed, and HouseCanary secure in the (false) representations regarding Amrock and Quicken Loans' intended uses of HouseCanary's intellectual property, Amrock and Quicken Loans asked HouseCanary to share its most valuable secrets and insights into how its models and software were created – data dictionaries, modeling, and algorithms.

13.     In fact, Amrock was using this information for the precise improper purpose it had promised HouseCanary it would not do– developing its own competing valuation models and amassing a data warehouse to train those models which could be used for Quicken Loans and others in its family companies.

14.     Once Quicken Loans and Amrock had what they wanted, Amrock attempted to unilaterally re-write the contract and avoid paying HouseCanary – including surreptitiously removing once again the provision preventing databasing or creating derivative products.  HouseCanary, however, uncovered the truth – that Amrock, Quicken Loans and other defendants had been working to develop

competing products to HouseCanary throughout the relationship and had been using HouseCanary's intellectual property to do so.

15.     Specifically, Amrock secretly developed its own AVM, similarity score, and complexity score using HouseCanary's technology.  On March 14, 2018, a jury in San Antonio found unanimously:

- Amrock willfully misappropriated HouseCanary's trade secrets including its valuation models, data dictionary, data compilations, similarity score and complexity score used for real estate valuation;
- Amrock willfully defrauded HouseCanary;
- Amrock breached its nondisclosure agreement with HouseCanary; and
- Amrock breached its other agreements limited its use of HouseCanary's data and technology.

16.     In contrast, the jury in San Antonio unanimously found that HouseCanary had *complied* with *all* agreements between the parties.

17.     At trial, Amrock's CEO Jeff Eisenshtadt admitted that his company's AVM – which the jury found was developed using the misappropriated HouseCanary trade secrets – was available to Quicken Loans and "being used every day to run and test against other appraisal data."  He further acknowledged that Amrock's AVM was being used internally within the FOCs.

18.     Quicken Loans and its affiliates cannot be permitted to use valuation models which have been found to be based on stolen technology from HouseCanary.

## **PARTIES**

19.     Plaintiff HouseCanary is a Delaware corporation with offices in San Francisco, California, San Antonio, Texas, and Boulder, Colorado.  HouseCanary's Chief Executive Officer, and Chief Operating Officer are located in San Francisco.

20.     Defendant Quicken Loans is a Michigan corporation with its principal place of business in Wayne County, Michigan. Quicken Loans is wholly owned by Rock Holdings, Inc. ("Rock Holdings").

21.     Defendant One Reverse Mortgage is a Delaware corporation, with its principal place of business located in San Diego, California.  One Reverse Mortgage is wholly owned by Rock Holdings.

22.     Defendant In-House Realty is a Michigan corporation, with its principal place of business located in Wayne County, Michigan. In-House Realty is wholly owned by Rock Holdings.

## JURISDICTION AND VENUE

23.     This Court has personal jurisdiction over Defendants by virtue of their wrongful conduct in which they engaged in the State of California, which caused harm to HouseCanary in this state.

24.     Jurisdiction exists over both federal and state law claims under 28 U.S.C. 1331 and 1367(a).

25.     Venue in this district is proper under 28 U.S.C. 1391.

## GENERAL ALLEGATIONS

26.     Quicken Loans is the second largest mortgage lender—and largest online mortgage lender—in the United States and a member of the Quicken Loans "family of companies" ("FOC").  In-House Realty is a member of the Quicken Loans FOC and partners with Quicken Loans in the real estate space to provide real estate referrals and property searches.  One Reverse Mortgage, also a member of the Quicken Loans FOC, is the largest retail reverse mortgage lender in America.  Amrock, Inc. ("Amrock"), formerly known as Title Source, Inc. ("Amrock") is Quicken Loans' captive appraisal and title business, and is also a member of the Quicken Loans FOC.  Members of the FOC operate under a shared services model wherein they pay one another fair market value for services provided by one another.

27.     Collectively, the Defendants have a dominant position in the market for home loans and use that to increase their scope and reach.  For example, Quicken Loans introduced its eponymous "Rocket Mortgage" in 2016 – touting its ability to complete the mortgage application process and provide consumers a mortgage within

minutes. In 2017, Quicken Loans and In-House Realty announced a plan to build an "end-to-end homebuying experience," thus further solidifying the FOC's dominance in the homebuying market. https://www.inman.com/2017/06/20/quicken-loans-wading-further-into-real-estate

28.     As part of Quicken Loans' and its family of companies' aggressive plan to provide consumers with nearly instantaneous loans, it realized it needed more advanced appraisal capabilities including more accurate home valuation technology.

29.     Rather than investing its own time and money to build these capabilities, Quicken Loans went another route: it took that technology from HouseCanary – a startup that had worked aggressively to develop innovative and sophisticated technology in this field.

30.     Specifically, Quicken Loans directed its captive appraisal and title business, Amrock, now Amrock, also a member of the Quicken Loans FOC, to form a business relationship with HouseCanary – ostensibly to license HouseCanary's technology and data for a fee pursuant to a contractual relationship, and subject to stringent limitations on use by Amrock, Quicken Loans and ORM – and no rights to use for the other members of the FOC. The true purposes were revealed to be very different.

31.     In January 2015, at the direction of Quicken Loans' top employees, Amrock established a contractual relationship with HouseCanary.  Under a Master Software License Agreement (the "MSA"), HouseCanary agreed to license to Amrock the use of its proprietary appraisal software called "HouseCanary Appraiser." Amrock and HouseCanary entered this relationship subject to an existing Non-Disclosure Agreement ("NDA"), which prohibited Amrock and any agents or Affiliates (including Defendants) from disclosing or using Confidential Information for a purpose other than the stated Purpose of the Disclosure and would not disassemble, reverse engineer, or "develop, manufacture, produce, and/or distribute any software product or business system device from or which otherwise uses any …

Confidential Information."  The NDA was expressly incorporated into all subsequent agreements between HouseCanary and Amrock, including a provision that subjected Quicken Loans to its terms if it received any data from HouseCanary.

32.     Amrock immediately saw the immense value in HouseCanary's technology and data compilations before the evaluation period had even ended, approached HouseCanary about expanding the scope of the relationship. HouseCanary, Amrock and Quicken Loans originally discussed an agreement whereby Amrock *and* Quicken Loans would be parties and would have direct rights to use HouseCanary's proprietary software and data compilations.  However, Quicken Loans decided at the last minute not to be a party to the license agreement.

33.     Instead, Defendants opted to gain access to HouseCanary's intellectual property through Amrock as a conduit, despite signing a contract that explicitly restricted access to Amrock and, on a limited basis, Quicken Loans and One Reverse Mortgage.  IHR had no rights under the contract.

34.     Equally important – and equally flouted by Defendants – were the limits on how *any* member of the FOC, including Amrock, could use HouseCanary's software and data provided pursuant to the limited license agreement that was ultimately signed. Prior to signing the agreement, Amrock had internal meetings recognizing that, under the $5 million version of the Agreement, they had no right to simply pull a million records to warehouse.

35.     Despite the FOC's clear recognition of the restrictions on uses and beneficiaries under the contemplated license agreement, Defendants intended all along to exploit Amrock's relationship with HouseCanary to gain access to HouseCanary's real estate data, analytics, and appraisal software so that they could wrongfully take and appropriate that technology, while trying to pass it off as though Amrock had independently developed the same products.

36.     Prior to signing the Agreement, Amrock discussed internally the need to have language in the contract in case they got "cold feet" and also to discuss what to do when they wanted to do bigger things with HouseCanary's data.

37.     The revised agreement, executed in November 2015 (the "Amended MSLA") reflected none of the FOC's grand plans.  To the contrary, it granted Quicken Loans and One Reverse Mortgage limited access to a subset of data contained In-HouseCanary's Value Report – Quicken Loans could use these data and analytics *solely* for its internal use.  In-House Realty had no rights under the Amended MSA to use or even receive HouseCanary's Value Report or the data and analytics contained therein.

38.     Even that internal use was limited by "Additional Terms and Conditions."  Specifically, the contract incorporated the NDA, which strictly forbade reverse engineering or other uses of the data by Amrock, and certainly by Quicken Loans and ORM, who had limited rights to use and added further explicit restrictions:

> **Unless agreed to in writing, Licensee may not (a) use any Appraisal, analytics, metrics, reports or any Data for any purpose other than as expressly set forth herein, (b) deliver or display any Appraisal, analytics, metrics, reports or any Data to the general public via the Internet or other electronic or print media, including email or direct mail, or otherwise use any Appraisal or other analytics, metrics, reports or Data for advertising or promotional campaigns, (c) or resell, relicense, or redistribute any analytics, metrics, reports or Data in whole or in part or use any analytics, metrics, reports or Data, or any portion thereof, to create any database or derivative products. Licensee may not decompile, disassemble, scrape, decode, reverse translate, or reverse engineer any analytics, metrics or reports or any component or portion thereof.**

39.     Instead of utilizing HouseCanary's reports and data as permitted by the Amended MSLA, Quicken Loans decided it wanted to bring this highly valuable and critical technology "In-House."  Working with its affiliates Amrock and IHR, Quicken Loans devised a plan to appropriate HouseCanary's valuation technology and use HouseCanary's data to machine train its own undeveloped technology.

40.     In the months that followed, Quicken Loans and its affiliate Amrock worked hand-in-hand with HouseCanary on the implementation of an appraiser application for use by Amrock appraisers, giving Quicken and Amrock direct insight

into HouseCanary's technology and development. HouseCanary – acting in reliance on the strictures of the NDA, as well as oral representations from Amrock that it was not in the business of developing its own internal valuation products – provided Amrock with data dictionaries, detailed information about its proprietary appraisal models, and other highly confidential information.   In addition, Amrock began generating tens of thousands of HouseCanary's Value Reports as soon as the Amended MSLA permitted it to do so and received millions of underlying data points. Amrock continued to download thousands of those Value Reports even after it terminated the Amended MSLA.  Amrock provided these Value Reports to Quicken Loans *and* In-House Realty, which was not entitled to receive access to these Value Reports under the Amended MSA.

41.    Despite Quicken Loans and Amrock testing and deploying HouseCanary's products, giving them favorable reviews and internally touting their capabilities and value, Amrock abruptly brought a declaratory judgment action against HouseCanary on April 12, 2016,[1] and terminated the contract one week later.  By refusing to pay HouseCanary, Quicken Loans and Amrock were attempting to deprive the startup of moneys while they developed their own product.

42.    There was a reason behind the sudden termination of HouseCanary that had nothing to do with any purported "failure" by HouseCanary perform its obligations: Quicken Loans had gathered sufficient appraisal and valuation data, technological insight, and information on software appraisal analytics from HouseCanary through its affiliate Amrock to enable it to achieve its longstanding goal – carefully hidden from HouseCanary -- to launch its own automated valuation model and appraisal technology.  In fact, Quicken Loans and Amrock starved HouseCanary of cash by intentionally failing to make required payments and tried to get HouseCanary to agree to an after-the-fact contract amendment that would have

---

[1] The lawsuit Amrock filed against HouseCanary is *Title Source, Inc. v HouseCanary, Inc.,* No. 2016CI06300, Bexar Country, Texas, 73rd Judicial District.

excused Quicken Loans' and Amrock's misappropriation of HouseCanary's data, expertise, and analytics.

43.     In September 2016, just months after Amrock abruptly and unlawfully terminated the License Agreement with HouseCanary pursuant to which it had received HouseCanary's highly valuable intellectual property, Amrock announced at a Quicken Loans technology conference attended by the Quicken Loans FOC that Amrock had developed its own internal AVM for use by the FOC and, eventually to be used by the public. In particular, this purported "internal" AVM would be used by Quicken Loans bankers, IHR agents, and Amrock Appraisers.

44.     Amrock's efforts to build its own valuation model came from a data science team which in November 2016, was absorbed by Quicken Loans.  Quicken Loans' "data science" teams (the teams responsible for developing models like the AVM) came from Amrock – the team that had worked directly with HouseCanary and had gotten access to all of HouseCanary's technology and which continued working on developing an internal AVM and other related products throughout 2016, using HouseCanary's data and analytics.

45.     For example, Claude Wang, a "Data Modeler" at Amrock, moved over to Quicken Loans in November 2016, when the Amrock officially merged its data science team with Quicken Loans.  Also, on this data science team was a modeler named Tianqi "Ryan" Yang, who was the data modeler assigned to the HouseCanary project and, specifically, testing and evaluating HouseCanary' data and tracking the inputs for its proprietary AVM and related valuation models.

46.     In October 2017, Quicken Loans announced that its mortgage services division had launched an automated valuation tool, QL Property Hub, which it boasted "uses multiple machine learning algorithms to present property values using property details, recent comparable sales data and an interactive map with street level details."   *See*:  http://www.quickenloans.com/press-room/2017/10/06/quicken-loans-

mortgage-services-creates-exclusive-revolutionary-home-valuation-tool-partner-banks-brokers-credit-unions.

47.     In the middle of the trial it initiated against HouseCanary, Amrock announced that it was rebranding itself as Amrock, Inc. and becoming a "leading-edge provider of Fin-Tech services." Such fin-tech services, include offering AVM's and pricing models.  Amrock's biggest client is Quicken Loans.  The AVM that Amrock announced in October 2016 that it had developed is currently being used daily among the Family of Companies, including Quicken.

48.     Contrary to Quicken Loans' claim that it had "created" its home valuation tool, this technology was lifted from the hard work and technological insight of HouseCanary.

## SPECIFIC ALLEGATIONS

### A.     HouseCanary Brings Innovation to the Appraisal Industry

49.     HouseCanary is a highly innovative technology company. Recognizing that the housing bubble that led to the Great Recession was caused, in part, by improper valuations. inaccurate market forecasts, and incorrect information, HouseCanary honed in on technology to enhance information, valuation techniques, and market forecasts to the residential real estate market. From the outset, HouseCanary, and the proprietary software and data it developed and compiled, garnered the respect and praise of investors and players in the appraisal industry – including Amrock and Quicken Loans. As set forth in greater detail below, HouseCanary has developed and owns numerous trade secrets, including highly valuable proprietary software, algorithms, models, data, reports, forms, data sources, knowhow, techniques, and methods relating to various aspects of real estate valuation and other areas.

**B.     Amrock and Quicken Loans Induce HouseCanary to Share Its Intellectual Property**

50.     In 2013, Bill Emerson, the Vice Chairman of Quicken Loans and Rock Holdings (Quicken Loans' parent company), encouraged Amrock to contact HouseCanary and reach an agreement to license HouseCanary's appraisal products for use by Quicken Loans and Amrock.

51.     The first thing Amrock and HouseCanary did was execute a Non-Disclosure Agreement ("NDA") so the parties could exchange confidential information.   Under the NDA, Amrock had to agree that it would "*not use the Confidential Information for a purpose other than for the stated Purpose of the Disclosure; and will not copy such information for a purpose other than for the stated Purpose of the Disclosure.*" It further required Amrock "*not to disassemble or decompile software, or otherwise attempt to reverse engineer the design and function of any of the Confidential Information, nor … develop, manufacture, produce, and/or distribute any software product or business derived from or which otherwise uses any of the Confidential Information.*"

52.     These strictures extended to Amrock's agents and affiliated parents and subsidiaries to the extent they received any Confidential Information. Specifically, the NDA applies to "Affiliates, employees and agents of that Party."  The term "Affiliate" is defined to include "parents, subsidiaries, that directly or indirectly, control, is/are controlled by, or are under common control with a Party." The NDA provides that the signatories, by entering into the NDA bind any "Party Affiliates who obtain Confidential Information."  Quicken Loans and One Reverse Mortgage are expressly named as "Affiliates" in the Amended Master Software License Agreement between HouseCanary and Amrock.  Thus, any information received by Quicken Loans – either by direct dealings with HouseCanary or through Amrock – was subject to limitations on use and confidentiality.

53.     Amrock entered into a Master Software License Agreement with HouseCanary on January 29, 2015 (the "MSLA").  The MSLA gave Amrock Source a license to the HouseCanary Appraiser software—mobile and web-based software that delivered HouseCanary's data, analytics, and estimate home values to home appraisers in the field.  Under the MSLA, Amrock was entitled to evaluate HouseCanary's proprietary appraisal software—free of charge—for a period of 120 days, and to terminate the evaluation period in its sole discretion.  The purpose of the MSLA was to give Amrock the opportunity to evaluate the Appraiser application.  The MSLA explicitly incorporated the terms of the NDA.

54.     Just a month after executing the MSLA, in February 2015, Amrock, at the encouragement of Quicken Loans high-ranking employees, approached HouseCanary about gaining greater access to HouseCanary's software and products through an expanded licensing agreement.  In late February 2015, HouseCanary, Quicken Loans and Amrock had a series of meetings to discuss the many additional opportunities that HouseCanary could offer.

55.     At the same time, internally, Amrock's top executives were directing their data science team to begin developing an internal automated-valuation model for the FOC – exactly the product that Amrock was negotiating with HouseCanary to receive.

56.     In mid-2015, HouseCanary and Amrock were negotiating an amended license agreement that included the Appraiser Application – the subject of the original MSLA – as well as HouseCanary's proprietary collections of real estate data and analytics, included broad to access to HouseCanary's Value Report and the proprietary data points that underlie it including a similarity score for comparable properties.

57.     Jay Farner, Quicken Loans' CEO, and Sam Vida, IHR's president, among other employees of Defendants, participated in these meetings with HouseCanary where HouseCanary presented its products and offerings.

58.     The original proposal for a revised license agreement provided for Quicken Loans *and* Amrock to have access as Amrock to HouseCanary's Appraiser Application and Value Report.  However, Amrock later informed HouseCanary that it did not want the contract to cover Quicken Loans – it wanted to negotiate for Amrock alone to have the full access to the software.

59.     Amrock and HouseCanary finalized the amendment to the MSLA ("the Amended MSLA"), and executed it on November 11, 2015.  The MSLA provided Amrock with access to two central products – the HouseCanary Appraiser Application and the HouseCanary Value Report.

60.     The Amended MSLA did not provide Defendants with any direct rights.  Rather, it authorized Amrock to provide Quicken Loans and One Reverse Mortgage with access to certain clearly-delineated data and analytics set forth in the MSLA, for "internal purposes only."  In-House Realty had no rights under the Amended MSLA, through Amrock or otherwise.

61.     Throughout the negotiations beginning in early 2015, HouseCanary sought and received assurance that Amrock and Quicken Loans were not developing their own AVM, similarity score model, complexity score model, or any other competing products with HouseCanary's offerings – in other words, they were not seeking access to HouseCanary's data, analytics and software for purposes of developing competing products.

62.     In addition to these oral assurances, the Amended MSLA incorporates the terms of the NDA, and adds even stricter protections for HouseCanary's Confidential Information.  The Amended MSLA states expressly that Amrock must not: "*use any analytics, metrics, reports or Data, or any portion thereof, to create any database  or derivative products* … [or] *decompile, disassemble, scrape, decode, reverse translate, or reverse engineer* any analytics, metrics or reports or any component or portion thereof."  This provision strictly limits the uses for which Amrock was entitled to provide HouseCanary's Licensed Software to its Affiliates

Quicken Loans and One Reverse Mortgage under the Amended MLSA. Furthermore, any Affiliates were explicitly subject to the requirements set forth in the NDA regarding permissible uses of HouseCanary Confidential Information.

63. But Amrock and Quicken Loans *always, before, during and after executing the agreements with HouseCanary,* intended to amass HouseCanary's data, and use its proprietary analytics to develop their own products for the benefit of the FOC.

64. For example, even before January 2015, when HouseCanary and Amrock signed the *first* MSLA, Amrock and Quicken Loans' data science teams were working to develop the very products it was licensing from HouseCanary.

65. For example, various internal Amrock presentations referenced the importance of Amrock developing an AVM for the entire FOCs, especially Quicken Loan bankers.

66. When the Amrock (then TSI) AVM was launched, it was announced to the combined "TS-QL (Title Source-Quicken Loans)" data science team.

67. Sam Vida, IHR's President, and Jennifer Madden, IHR's Head of Business Development, participated in evaluating HouseCanary's offerings in early 2015, in connection with a stated goal of "aggregating all of the data in a single UI/stand-alone platform." High-level employees at Quicken Loans were also involved in these conversations.

**C.    Defendants Obtained HouseCanary's Confidential Information and Used it to Develop Competing Appraisal Products for Use by the FOC**

68. With confidentiality restrictions in place and Quicken Loans' and Amrock's representations that they were not building their own valuation products, HouseCanary provided extensive data and insight into its models. Amrock, in cooperation with Quicken Loans and In-House Realty, wasted no time warehousing HouseCanary's Value Reports, compiling the information HouseCanary provided

about its products and algorithms, and reverse engineering those algorithms to develop the internal AVM and other models, all in contravention of their commitments and oral agreements and assurances.  For example:

- HouseCanary shared "information regarding the property attributes and score" with Amrock data modeler, Ryan Yang.  That data modeler was and had been working on the Amrock AVM for months, and was also working on a similarity score and complexity score for Amrock.  Ryan Yang reported to Lucy Liu, a Quicken Loans (not Amrock employee).

- HouseCanary made a "proprietary and confidential" presentation to Amrock on its Appraisal Complexity API, and on how it built the model and its functions.

- In 2015, an Amrock data modeler had developed code that integrated HouseCanary's information.  He sent that code to a Quicken Loans modeler.

- Promptly upon signing the MSA Amendment One, Amrock began downloading thousands of Value Reports per day from HouseCanary.  Indeed, Amrock continued to generate thousands of Value Reports even after Amrock filed the Texas  lawsuit and, in breach of applicable notice provisions, purported to terminate the parties' agreement.  In February 2016, an In-House Realty employee asked Amrock how close they were to IHR being able to use HouseCanary data – despite the fact that IHR had **no rights** under the MSA Amendment One.  Amrock's Chief Appraiser, Jordan Petkovski directed the project managers for the HouseCanary project to send a copy of HouseCanary's proprietary Value Report over to IHR.

- In March 2016, HouseCanary provided Amrock with its "Appraisal complexity score."

- In September 2016, Amrock unveiled the Title Source AVM at the Quicken Loans Technology Conference, an internal conference for members of the FOC.  The presentation announced that the AVM would be primarily used by Quicken Loans bankers, IHR agents and Amrock appraisers.

- A white paper authored by Amrock/Quicken modeler Claude Wang offered insight into why "an accurate in-house Automated Valuation Model could leverage the FinTech and big data tools and greatly benefit *the Family of Companies (FOC)."*

- Specifically, Amrock anticipated using the Amrock AVM for Quicken Loans bankers who could use the Amrock AVM to demonstrate to clients the value of their homes.  Amrock also anticipated using the Amrock AVM for providing IHR agents with a comprehensive analysis of property and estimates of property value with a confidence range – exactly what HouseCanary's products do.

- Amrock's website in October 2017 stated that it is "proud to offer two innovative new products on our website: Our cascading Automated Value Model (AVM) and Value Preview (VP) products.  Similar to an appraisal, these products  provide  a  Value  Report  on  your  residential property."  http://www.titlesource.com/solutions/valuation.

- Jeffrey Eisenshtadt, Amrock's CEO, has admitted that the Amrock AVM that was revealed in October 2016 at the Quicken Loans Technology conference is available to Quicken Loans and being used every day within the FOC.

- In February 2018, Amrock unveiled its new rebrand as Amrock, which boasts that it is a "FinTech" company at its core and a "leading-edge provider of Fin-Tech services." Such fin-tech services, include offering AVM's and pricing models nationwide for public consumption.

69.     Defendants were involved at every turn. Even before the Amrock and Quicken Loans data science teams merged, Amrock's employees in charge of developing the internal valuation models using HouseCanary's intellectual property reported to Lucy Liu, a Quicken Loans employee.

70.     High-ranking Quicken Loans and IHR employees were considered "stakeholders" in the HouseCanary relationship and were included on weekly updates regarding the development and performance of the AVM model Amrock was developing. They were actively involved in directing the project, determining data sources – including HouseCanary's data – and discussing potential business uses for the FOC. In fact, Jeff Cymbalski, a Quicken Loans employee was a key member of the HouseCanary project team.

## FIRST CAUSE OF ACTION

### (Misappropriation of Trade Secrets — Cal. Civil Code § 3426, et seq.)

### (Against All Defendants)

71.     HouseCanary hereby realleges and incorporates by reference the allegations contained in paragraphs 1 through 71 as though fully set forth herein.

72.     In the course of its dealings, HouseCanary provided access to valuable trade secrets related to its real estate data, analytics, and appraisal software to Quicken Loans through its affiliate Amrock. Specifically, as part of HouseCanary's provision of services to Amrock and Quicken Loans (and pursuant to an NDA), HouseCanary shared trade secret information including, but not limited to:

- HouseCanary's AVMs
- HouseCanary's data dictionary

- HouseCanary's data compilations
- HouseCanary's similarity score
- HouseCanary's complexity score

("HouseCanary Trade Secrets.")

73.    Given the importance of the confidential information to House Canary, it was maintained with the highest degree of security pursuant to the company's robust policies.   HouseCanary mandated that its customers enter into an NDA before providing them with any confidential or trade secret information – and Amrock did enter into such an NDA which also bound Defendants. The NDA includes requirements that the licensee not reverse-engineer HouseCanary products, data, or analytics in any way or use them beyond the scope of the NDA.

74.    The NDA Amrock signed promised that it would "not use the Confidential Information for a purpose other than for the stated Purpose of the Disclosure; and will not copy such information for a purpose other than for the stated Purpose of the Disclosure." NDA Section II(2)(A)(i). The NDA section II(2)(A)(v) requires Amrock "not to disassemble or decompile software, or otherwise attempt to reverse engineer the design and function of any of the Confidential Information, nor will it develop, manufacture, produce, and/or distribute any software product or business derived from or which otherwise uses any of the Confidential Information."

## SECOND CAUSE OF ACTION

### (Misappropriation of Trade Secrets Under the Defend Trade Secrets Act of 2016 (18. U.S.C. § 1836(b)(1))

75.    Plaintiff realleges and incorporates by reference paragraphs 1 through 71 as if fully alleged herein.

76.    While working with its affiliate Amrock, Defendant Quicken Loans obtained access to Plaintiff HouseCanary's Trade Secrets.

77.    HouseCanary developed at great expense and owns the HouseCanary Trade Secret Information.  HouseCanary has kept confidential for use by the company

the HouseCanary Trade Secret Information, which is information not generally known in the industry or publicly.

78.    The HouseCanary Trade Secret Information obtained by Defendant is related to Plaintiff's trade secrets and inventions that are used in or intended for use in interstate commerce.

79.    HouseCanary has taken reasonable steps as part of its ongoing operations to maintain the confidential nature of this information.  For example, all HouseCanary employees and customers are subject to confidentiality agreements.  HouseCanary documents are maintained on an internal system, and HouseCanary personnel are directed to work on HouseCanary-provided computers.

80.    Based on the trial testimony of Amrock CEO Jeffrey Eisenshtadt, Defendant Quicken Loans has used and is continuing to use HouseCanary's Trade Secret Information.   In doing so, Defendant is maliciously and willfully using misappropriated confidential, proprietary, and trade secret information to its own advantage in competition with Plaintiff.  Based on information and belief, Quicken Loans has shared the misappropriated trade secrets with other members of the Quicken Loans FOC, including Defendants In House Realty and One Reverse Mortgage.

81.    As a result of Defendants' misappropriation and use of the confidential, proprietary, and trade secret information, Defendant has violated the Defend Trade Secrets Act of 2016, 18 U.S.C. § 1836(b)(1).

82.    As a direct and proximate result of Defendant's violation of the Defend Trade Secrets Act of 2016, Plaintiff has sustained substantial damages in an amount that will be established at trial of this matter.

83.    Defendant's actions in converting and misappropriating Plaintiff's confidential, proprietary, and trade secret information for Defendant's own gain were willful, wanton, and malicious, and were taken with reckless disregard for the rights of Plaintiff.

COMPLAINT

84.   Defendant's actions have caused and will continue to cause Plaintiff irreparable harm if not preliminarily and permanently enjoined.

85.   Plaintiff has no adequate remedy at law.

### THIRD CAUSE OF ACTION

### (Unfair And Unlawful Business Practices — Cal. Bus. & Prof. Code §§ 17200, *et seq*.)

86.   HouseCanary hereby realleges and incorporates by reference the allegations contained in paragraphs 1 through 71 as though fully set forth herein.

87.   The conduct of Quicken Loans, In-House Realty and One Reverse Mortgage, alleged herein, constitutes unfair and unlawful business practices in violation of Bus. & Prof. Code §§ 17200, *et seq*.  Quicken Loans, In-House Realty and One Reverse Mortgage, using Amrock as their messenger and conduit, induced HouseCanary to provide its intellectual property – set forth above – under the mistaken belief that Amrock would not unlawfully disclose that intellectual property beyond the scope permitted by the Amended MSLA, and would, under no circumstances, use that intellectual property to create internal valuation models for use by the FOC.

88.   The Defendants knew that by stealing and using HouseCanary's confidential information without HouseCanary's permission and, indeed, in direct contravention of the NDA that governed HouseCanary's disclosure of its confidential information, they were engaging in unfair business practices by acting in violation of Cal. Civ. Code §§ 3426, *et seq*.  On information and belief, employees of Quicken Loans, IHR, and ORM having used and continue to use, HouseCanary's trade secrets unfairly and unlawfully, plainly in violation of the NDA that Amrock and HouseCanary signed, the Amended MSLA, and principles of professional decency.

89.   As a direct result of these concerted actions, HouseCanary has suffered monetary, competitive and irreparable harm.

## **PRAYER FOR RELIEF**

WHEREFORE, HouseCanary prays for judgment against Quicken Loans Inc., One Reverse Mortgage and In-House Realty as follows:

1.      Compensatory damages, plus interest and prejudgment interest in an amount to be determined at trial;

2.      Other economic and consequential damages in an amount to be determined at trial;

3.      Preliminary and permanent injunctive relief to prevent use by the Defendants of any trade secrets belonging to HouseCanary in any way, including in developing, designing or machine training any real estate appraiser or analytic technology or products;

4.      Preliminary and permanent injunctive relief to prevent use by the Defendants of any trade secrets belonging to HouseCanary;

5.      Preliminary and permanent injunctive relief to prevent use by the Defendants of AVMs, appraisal softwares or any valuation models derived directly or indirectly through use of HouseCanary trade secrets;

6.      Restitution of all profits made by Defendants, in the past and future, as a result of having engaged in the wrongful conduct which has or will damage Plaintiff;

7.      Attorneys' fees, witness fees and the costs of the litigation incurred by HouseCanary in an amount to be determined at trial;

8.      For the costs of the suit incurred herein; and

9.      For such other and further relief as the Court deems just and proper.

Kalpana Srinivasan
SUSMAN GODFREY L.L.P.
1901 Avenue of the Stars, Suite 950
Los Angeles, California 90067-6029
Telephone: (310) 789-3100
Facsimile: (310) 789-3150
ksrinivasan@susmangodfrey.com

22

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Max L. Tribble, Jr.
State Bar No. 20213950
Matthew C. Behncke
State Bar No. 24069355
Rocco Magni
State Bar No. 24092745
SUSMAN GODFREY L.L.P
1000 Louisiana Street, Suite 5100
Houston, Texas 77002-5096
Telephone:  (713) 651-9366
Fax:  (713) 654-6666
mtribble@susmangodfrey.com
rmagni@susmangodfrey.com

Elisha Barron
SUSMAN GODFREY L.L.P.
1301 Avenue of the Americas, 32nd Fl.
New York, NY 10019
Telephone: (212) 336-8330
Facsimile: (212) 336-8340
ebarron@susmangodfrey.com

ATTORNEYS FOR PLAINTIFF
HOUSECANARY, INC.

COMPLAINT